UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MARGARITA PEREZ | : | |
| | : | |
| v. | : | C.A. No. 07-273A |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on July 20, 2007 seeking to reverse the decision of the Commissioner. On May 23, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 10). On July 14, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 15).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 15) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on November 23, 2004, alleging disability as of January 1, 2001. (Tr. 53-56). The application was denied initially (Tr. 33-35) and on reconsideration. (Tr. 37-41). Plaintiff filed a request for an administrative hearing. (Tr. 42). On October 6, 2006, a hearing was held before Administrative Law Judge Barbara Gibbs (the "ALJ") at which Plaintiff, assisted by a translator and represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 298-333).

On January 26, 2007, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 10-23). The Appeals Council denied Plaintiff's request for review on May 16, 2007. (Tr. 5-8). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in failing to find her fibromyalgia to be a severe impairment and in failing to adequately explain her reasoning for that determination. Plaintiff also argues that the ALJ erroneously discredited the opinions of the treating physician and examining psychiatrist. Finally, Plaintiff argues that the ALJ's decision is not supported by substantial evidence.

The Commissioner disputes Plaintiff's claims and asserts that the Commissioner's final decision that Plaintiff was not disabled is supported by substantial evidence and based upon a proper application of the law.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do

not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this

burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was forty-three years old at the time of the ALJ hearing (Tr. 47), is unable to communicate in English (Tr. 301-302) and completed the ninth grade in Puerto Rico. (Tr. 303-304). Plaintiff alleges disability due to pain in her back, legs, knees, hands, feet and neck; as well as depression, anxiety and psoriasis. (Tr. 58).

Plaintiff treated with Dr. Jorge Gonzalez at the Providence Community Health Center. (Tr. 117-151, 159-161, 211-284). In September 2004, she was noted to have a painful, swollen left knee and underwent an ACL repair in November. (Tr. 123-124, 130). Her pain was noted to have lessened following the surgery. (Tr. 133). By January 2006, however, Plaintiff's left knee pain had returned, and she was treated with steroid injections. (Tr. 225). During 2006, Ms. Perez also developed problems with her right knee and had surgery on that knee as well. (Tr. 235).

Plaintiff's medical records note persistent back and neck pain and body aches with a diagnosis of fibromyalgia. (Tr. 117, 130, 161, 224, 245, 246, 248, 250). Plaintiff was treated with medications such as Neurontin, Percocet and Lyrica, which helped for a time, but her pain persisted.

(Tr. 224, 246, 248-249). An MRI performed in September 2005 revealed a normal lumbar spine. (Tr. 262). Finally, Dr. Gonzalez's records note anxiety and depression. (Tr. 117, 136, 161, 215, 221, 222).

In March 2005, Plaintiff saw Dr. Joseph H. Armen (Tr. 183) who diagnosed osteochondral injury medial ridge patella left knee, lateral meniscal tear of the left knee and ACL tear, left knee. (Tr. 184). Dr. Armen also noted that Plaintiff had "difficulty doing your usual activities." (Tr. 183). At her next visit, Plaintiff reported worsening pain (Tr. 185), which "conservative treatment...failed to adequately ameliorate" and she was referred to a surgeon. (Tr. 186). In October 2005, Plaintiff complained of right knee pain to Dr. Michael E. Wiggins. (Tr. 187). Dr. Wiggins noted normal range of motion but with tenderness and pain and he diagnosed "cartilage defect medial patella facet, right and ACL tear left knee." (Tr. 187-188). Dr. Wiggins prescribed Vicodin and cortisone injections. (Tr. 188-189). Plaintiff noted worsening pain in December 2005, and she was given more medications and injections. (Tr. 191-192). Dr. Wiggins noted that conservative treatment had failed and scheduled right knee arthroscopy. (Tr. 194). The surgery was performed in April 2006. (Tr. 181). Following the surgery, Plaintiff had physical therapy but continued to complain of pain and was continued on Vicodin. (Tr. 201-202). In July 2006, Plaintiff reported she was having more pain than before the surgery. (Tr. 207).

In September 2006, Plaintiff was evaluated by James K. Sullivan, a psychiatrist, at the request of her attorney. (Tr. 290-296). Dr. Sullivan diagnosed major depressive disorder and generalized anxiety disorder and rated Plaintiff's global assessment of functioning ("GAF") at 49. (Tr. 294). Plaintiff described feeling sad every day, having lost interest in socializing and other activities, poor sleep, agitation, less energy, feeling worthlessness and low self-esteem and problems

concentrating. (Tr. 290-291). Dr. Sullivan described Plaintiff as easily distracted and in need of redirection. (Tr. 293). He also completed a supplemental questionnaire as to residual functional capacity ("RFC") in which he rated Plaintiff's limitations as follows:

> Mild – the ability to perform simple tasks;
>
> Moderate – the ability to relate to other people including the ability to respond appropriately to co-workers and supervisors, and deterioration of personal habits;
>
> Moderately Severe – the activities of daily living, constriction of interests, ability to understand, carry out and remember instructions and to respond to customary work pressures, as well as her ability to perform complex, repetitive and varied tasks.

(Tr. 295-296).

On February 22, 2005 a state agency, non-examining physician completed a physical RFC form in which he stated his opinion that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. (Tr. 109). His opinion with regard to Plaintiff's ability to stand and use her extremities is somewhat unclear as he checked two boxes in each category. However, it reasonably appears that he meant Plaintiff could sit for only two hours until June 2005 and six hours after that. Id. He did the same with the use of lower extremities – limited only up to June 2005. Id. Another state agency physician affirmed such assessment in July 2005. (Tr. 115).

In September 2006, Plaintiff's treating physician, Dr. Gonzalez, completed an "emotional impairment questionnaire" in which he stated he has been treating her since July 2004, that her diagnoses were fibromyalgia, hypertension, depression, knee osteoarthritis and back pain, with moderate to severe symptoms and, in addition, that her medications caused drowsiness and dizziness. (Tr. 285-286). He also stated his opinion that Plaintiff was unable to work on a full-time, ongoing basis. (Tr. 286). Dr. Gonzalez also completed a "pain questionnaire" in which he said

Plaintiff suffered from significant pain, which he rated as moderate to severe, which was caused by fibromyalgia and her knee impairment and which was of sufficient severity to preclude sustained concentration. (Tr. 287).

**A. The ALJ's RFC Determination Is Not Supported by Substantial Evidence**

The ALJ decided this case adverse to Plaintiff at Step 5. The ALJ found that Plaintiff had the "severe impairments" of residual effects of both right and left knee surgeries, depression and anxiety. (Tr. 17). As to RFC, the ALJ found that Plaintiff could perform a range of sedentary work with nonexertional limitations for only unskilled work and only routine and repetitive tasks. (Tr. 19).

Plaintiff takes issue with the ALJ's evaluation of the medical evidence in several respects. The medical evidence in this case consists primarily of records from Plaintiff's treating physicians, a one-time psychiatric evaluation performed at the request of Plaintiff's attorney and a physical RFC assessment performed by a non-examining, reviewing physician. There are no mental RFC assessments by a reviewing psychiatrist or psychologist in the record. There were no consultative examinations (either physical or mental) obtained by the Commissioner. In addition, the ALJ did not utilize a medical expert at the hearing.

In her decision, the ALJ did not fully credit the opinions of the treating physician, Dr. Gonzalez, and the consulting psychiatrist, Dr. Sullivan. (Tr. 20-21). The ALJ also did not adopt the reviewing physician's opinion that Plaintiff retained the capacity for light work. (Tr. 20; Ex. 5F). The ALJ effectively adopted a middle ground somewhere between the two.

While the ALJ's analysis and conclusions appear reasonable on their face, the ALJ (like this Court) is not a medical professional. The primary reviewing physician, Dr. Missaghian, opined only

on Plaintiff's diagnosis of status post left knee surgery. (Tr. 108). His report was based on a review of the medical records as of February 2005. See Ex. 5F. However, as acknowledged by the ALJ, there is a substantial amount of "new evidence added to the record" since that time. (Tr. 20). This new evidence led the ALJ to conclude that Plaintiff was "more significantly limited than had earlier been found." Id. Plaintiff, however, contends that the ALJ did not go far enough and that her conclusion is not supported by any medical opinion. (Document No. 10 at pp. 10-11).

The "new" medical evidence which followed the reviewing physician's physical RFC assessment is material in both amount and substance. Plaintiff's left knee was repaired surgically in November 2004. Dr. Missaghian opined that this condition restricted Plaintiff to light work (with a lesser degree of limitation after June 2005). (Ex. 5F). In other words, Dr. Missaghian assumed Plaintiff would regain some physical capacity after a period of recovery and rehabilitation. The record, however, reveals that Plaintiff subsequently developed a problem with her right knee and ultimately had surgery in 2006 after conservative treatments (including injections) were unsuccessful. She also regularly reported chronic body aches and pain and there are multiple references in the record to fibromyalgia. On February 19, 2006, Dr. Gonzalez made a specific diagnosis of fibromyalgia based on the presence of greater than ten painful trigger points. (Tr. 245-246). Defendant concedes, as it must, that the ALJ did not specifically discuss Dr. Gonzalez's fibromyalgia diagnosis.

Defendant is correct that the outcome of a case should not turn on the presence or absence of "buzz words" such as fibromyalgia. However, in this case, a treating physician diagnosed fibromyalgia (Tr. 246) and opined that such condition caused disabling pain. (Tr. 287). This is not a case where a consulting physician or testifying medical expert contradicts or questions the validity

of a treating physician diagnosis. As noted above, the only independent review of the records occurred in early 2005 which was one year prior to Dr. Gonzalez's formal fibromyalgia diagnosis and nearly two years prior to the date of the ALJ's decision. Under these circumstances, the ALJ should have expressly evaluated the presence of fibromyalgia as an impairment and, if severe, its impact on Plaintiff's RFC. The ALJ did not do so.

Given the status of the record, the ALJ's RFC assessment is simply not based on an analysis of functional capacity by a physician or other expert with the benefit of a more longitudinal record. See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); and Rivera-Figueroa v. Sec'y of Health and Human Servs., 858 F.2d 48, 52 (1st Cir. 1988) ("we question the ALJ's ability to assess claimant's physical capacity unaided even by an RFC assessment from a nonexamining doctor"). It is not generally error for an ALJ to "reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citing Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037 (1st Cir. 1994). However, this case is unique. The ALJ based her RFC assessment on a lay interpretation of the "new" medical evidence and her view as to how that evidence would change the reviewing physician's opinion. (Tr. 20). Based on the unique circumstances of this case and the paucity of consultative evidence, the ALJ was not qualified to interpret the raw medical data as she did and made an impermissible lay determination in finding Plaintiff's RFC. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person...the ALJ was simply not qualified to interpret new medical data in functional terms and no medical opinion supported the determination.").

The evidence of disability appears to be reasonably thin and the outcome on remand may well be the same. However, the record is not sufficiently developed to permit the ALJ to reach the conclusions that she did. See Alcantara v. Barnhart, No. 07-1056, 2007 WL 4328148 at *1 (1st Cir. Dec. 12, 2007) (per curiam) ("Absent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion."). Thus, the ALJ's nondisability finding is not supported by substantial evidence, and a remand to allow a decision on a more fully developed record is warranted.

## VI. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 15) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be GRANTED. Final judgment shall enter in favor of Plaintiff remanding this case for further administrative proceedings consistent with this decision.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 9, 2008